## COMMISSIONER OF INTERNAL REVENUE v. NETCHER.

### No. 8340.

Circuit Court of Appeals, Seventh Circuit.

June 8, 1944.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Bureau of Internal Revenue, of Washington, D. C., L. W. Post,

Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., for petitioner.

Llewellyn A. Luce, of Washington, D. C., for respondent.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

*The Facts:* The stipulated facts show that respondent's grandfather, Charles Netcher, died in 1904. By his will he created a "principal" trust of which his wife was trustee. She received one-third of the income of this trust, and the remaining two-thirds were to be equally divided and paid to four "special" or subsidiary trusts for the benefit, respectively, of each his four children. The trusts were to run until they, respectively, reached the age of twenty-five. Thereupon each child was to be paid, during his life, his proportion of the income from both the principal and the special trusts. In case of the death of a child with issue, the income was to be paid to the deceased child's children, which was the respondent's position here, she being the child of the deceased son, Charles.

Respondent filed no return for 1937.

For the year 1937, the principal trust report showed a depreciation item of $142,868.98, which was a substantial factor in the net loss of $133,993.24, of the principal trust for that year. The subsidiary trusts realized income from their respective corpora. Respondent's special trust had distributable income of $6,052.61—and it is against this income that the net loss, including depreciation, of the principal trust is offset.

One of the assets of the settlor's estate was real property in Chicago, Illinois, upon which the trustee, his widow, thereafter erected a modern building, now occupied by the Boston Store. It cost approximately $5,714,759.52. In 1937 the expenses of the building, including depreciation, exceeded the income by $102,843.50, and this loss made up in large part the loss of the principal trust. By the end of 1937, the trustee had set aside in the reserve for depreciation, the sum of $2,112,545.64, which included the 1937 depreciation item of $142,868.98.

The trustee filed a return for the principal and subsidiary trusts, which showed the income allocable under the subsidiary trusts but offsetting it with the loss from the principal trust. This offset resulted in no taxable income to respondent for the year 1937.

One of the issues is that of res judicata. The following facts bear on that issue.

The Board of Tax Appeals heretofore held in the case of Newbury v. Commissioner, 26 B.T.A. 101, that the trustee was required (or the will was susceptible of that construction and the action of the parties confirmed that impression) to provide for depreciation reserve from the income of the principal trust. The Commissioner acquiesced in the decision. Mrs. Newbury is the trustee, and was the widow of the settlor, and the trust there involved is the instant one. The tax years there involved were 1923 to 1925.

There was no express provision for a depreciation reserve in the will, but the will did provide:

" * * * It being my wish that said real estate * * * shall be held together for the benefit of my entire Estate and the beneficiaries thereunder. * * * "

The Act of 1936 provides, in re depreciation:

"Sec. 23. *Deductions from Gross Income.* In computing net income there shall be allowed as deductions: * * *

"(*l*) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business * * *. In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. *In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable*

*to each.*" 26 U.S.C.A. Int.Rev.Acts, page 829.

The regulations promulgated pursuant to this statute provide:

"Art 23 (1)-1. *Depreciation.*— * * * In the case of property held by one person for life with remainder to another person, the deduction for depreciation shall be computed as if the life tenant were the absolute owner of the property so that he will be entitled to the deduction during his life, and thereafter the deduction, if any, will be allowed to the remainderman. In the case of property held in trust, the allowable deduction is to be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the will, deed, or other instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income which is allocable to the trustees and the beneficiaries, respectively. For example, if the trust instrument provides that the income of the trust computed without regard to depreciation shall be distributed to a named beneficiary, such beneficiary will be entitled to the depreciation allowance to the exclusion of the trustee, while if the instrument provides that the trustee in determining the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable deduction will be granted *in full* to the trustee."

In the Newbury case, the Board of Tax Appeals held that the trustee had the right to offset depreciation against the trust income, and the beneficiaries were taxable only on the excess of income over depreciation. It so concluded on the ground that when a trustee borrows from the corpus to erect a building he has the duty to restore that corpus to its original size by means of a depreciation reserve, even though the will makes no express provision therefor. The Board held that if the language of the will is not clear on this point, the interpretation placed upon it by the parties may be the decisive factor. It said,

"The will required, or was at least susceptible of, the construction which the trustee and the beneficiaries placed upon it. * . * * We think that they had no right under the will to have the annual income from the building distributed to them except as it exceeded an appropriate amount to restore the cost of the building at the end of its estimated life."

The two questions here involved are: (1) The effect of the prior decision of the Tax Court, then the Board of Tax Appeals, in the Newbury case, construing the will to require a depreciation reserve and therefore vesting in the trustee the concommitant right to use the depreciation deduction for income tax purposes. (2) The right of a taxpayer to use part of a depreciation deduction against the income of the property to which the depreciation is attributable; and the balance of the depreciation deduction to offset income from another and independent source.

Petitioner argues that the decision of the Board of Tax Appeals in Newbury v. Commissioner is res judicata and further "that if the trust agreement provides that the trustee in determining the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable deduction will be granted in full to the trustee."

The Tax Court held among other things that because of two changes in the 1928 Revenue Act, enacted after the Newbury decision, that decision was no longer res judicata or "the law of the case." Secondly, it seems to have held that the right to depreciation deduction was lodged entirely in the beneficiary, and, under authority of its Carol decision (Sue Carol v. Com'r, 30 B.T.A. 443), the taxpayer could use the unused portion of its depreciation deduction against other, independent income.

As to the first point—we are unable to agree that an intervening amendment of a *statute* provides the basis for a change in the construction of a *will*. The doctrine of "the law of a case" permits, wisely, of a change of decision, where, among other things, intervening between a first and second appeal, there has been a material change in the situation either as to the facts or in the applicable law. Luminous Unit Co. v. Freeman-Sweet Co., 7 Cir., 3 F.2d 577. In the instant situation, the statute was amended to provide for the use of the depreciation deduction in a contingency where the will specifically provides for the depreciation deduction, and also where it fails to so provide. It follows, therefore, that both the Commissioner and the courts must turn to the will to first determine whether it so provides. The statute in no way sets up criteria to

determine whether a will does or does not so provide.

■ In this case we have heretofore had a declaration by the Board, construing the will to require the trustee to set aside a depreciation reserve. Trustee had borrowed money from the corpus to erect the building, and the Board read the language of the will, "it being my wish that said real estate be held together for the benefit of my entire Estate and the beneficiaries thereunder," to mean that she, the trustee, was required to replace the borrowed money through depreciation deductions.

While the quoted provision of the will is not a perfectly clear authorization that the trustee should take a depreciation deduction, there is sound logic in the Board's original construction that such was the intent of the testator. We see no reason for changing that conclusion now. The construction of the will can not be made to turn on its belated effect on the income of a beneficiary of a subsidiary trust.

What was under consideration in the Newbury case was an ascertainment of the testator's intention, as disclosed by his will. No subsequent statute or tax situation can affect, much less change, the intention of the long-deceased testator.

■ We are convinced, and so hold, that the doctrine of res judicata is inapplicable because a different tax year is involved. The respective tax years do not involve the same issues. Montcith Bros. Co. v. United States, 7 Cir., 142 F.2d 139.

Believing and holding, as we do, that it was the testator's intention to provide for a depreciation reserve, we reach this conclusion, not because of any prior holding in the Newbury decision, but because the above-quoted language of the will, and the facts explanatory of the testator's intention, authorized the trustee to erect a building which would necessitate a large indebtedness. These facts convince us that no other construction of the deceased's will can be reconciled with his wishes, his testamentary directions, or his intentions.

This conclusion, however, does not settle the matter. The amendment to the statute and the regulation thereafter promulgated, both quoted above, still leave a vexatious question to be determined.

The Act of Congress here determinative was enacted to permit either a beneficiary of a trust or the trustee of a trust, or both, to use the depreciation deduction, under specified circumstances, to reduce taxable income of said parties.

The controversy therefore narrows itself down to a construction of the statute, which, in turn, involves the words "allocable" and "apportioned" as they appear in the last sentences of the statute as amended. Also debatable, though not controlling, are the words "in full" as used in the last sentence of Treasury Regulations 94.

In reaching any construction of this statute and this regulation, we must be guided by two rules.

■ We may not give to a regulation a construction which would violate or contradict the language of the statute. In other words, if the statute gives to the beneficiary a right to claim a depreciation deduction in a case where the trustee of a trust has a first right to make the deduction, but does not use it all, no regulation by the Treasury can defeat that right of the beneficiary.

■ The second rule which we must apply precludes our allowing any deduction not authorized by statute. Congress may refuse all deductions to taxpayers. The burden is on the taxpayer to show statutory authority for his asserted deductions. He must bring himself within the statutory authorization.

■ Finally in construing and applying the amendment we must not ignore its purpose, which was to permit of depreciation deductions to beneficiaries of a trust, not previously allowed to them.

What did Congress mean then when it provided that "the allowable deduction shall be apportioned * * * in accordance with the pertinent provisions of the" trust agreement? Does it limit the division of the deduction only to cases where settlor provided that a part of the depreciation shall be credited to income of trustee and the balance to the beneficiary? If so, its application will be rare, and if such be the correct construction, then the alternative "in the absence of such provision," the division of deduction, shall be "on the basis of the trust income allocable to each," becomes the important proviso of the amendment.

What is meant by "trust income allocable to each" is equally confusing, were it applicable to all cases where the settlor made no pertinent provisions in the trust for the apportionment between trustee and beneficiary.

We see light in the report of the Congressional Committee. We quote therefrom:

" * * * For example, if the trust instrument provides that the income of the trust computed without regard to depreciation shall be distributed to a named beneficiary, such beneficiary will be entitled to the depreciation allowance to the exclusion of the trustee, while if the instrument provides that the trustee in determining the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, *the allowable deductions will be granted in full to the trustee.* The bill contains similar provisions as to the deduction for depletion."

Our conclusion that trustee was required to make allowance for keeping the trust intact before making distribution to beneficiaries necessarily leads us to apply the statute in the light of the report of the committee, that the entire allowable deduction in this case is for the trustee. If the trustee takes the entire deduction, then beneficiary can take nothing.

In other words, the two clauses of the last sentence of the statute must be read together. The effect of testator's will was to make the depreciation deduction a credit which belonged solely to the trustee. There can be no apportioning of a deduction when it all belongs to one party. "The pertinent provision" of the will which created the trust did, in effect, though not in exact words, provide that the depreciation deduction belonged to the trustee. That result gave it all to the trustee.

The words "in full" in the regulations added nothing to the legal effect of the first contingency provided for in the statute and therefore do not conflict with the statute. In fact, the regulation adopted, so far as these words were concerned, the language of the committee report.

The instant decision may place a hardship upon the taxpayer in that she is in a less advantageous position than if she owned the trust property outright. If she owned the property she would be permitted to apply any excess of depreciation from any item of property against her income regardless of its source.

Her remedy, if any she be entitled to, must come through Congressional extension of the applicable depreciation deductions, a proposal which Congress might refuse, in view of the possibilities of abuse where there is a plurality of trusts (a common device used in attempts to avoid or evade income taxes) in which the same beneficiaries are interested, or through changes in the earnings of the trusts. It may not be effected by the court's changing a sound construction of the will creating the trusts. Nor are courts justified in extending the use of depreciation deductions to situations not covered by the statute.

The decision of the Tax Court is reversed with directions to enter one in accordance with the views here expressed.